## Sophia Grimm, Appellee, v. Donk Bros. Coal & Coke Company, Appellant.

1. MINES AND MINERS—*section 28 of act construed.* This section was enacted for the protection of men when the hoisting or lowering of men occurs, and that portion of it which reads "or when the landing at which men take or leave the cage is obscured by steam or otherwise," relates back to the "hoisting or lowering of men."

2. MINES AND MINERS—*what wilful violation.* If the operator knows that the duties of a miner if performed require that he be given certain protection, a failure to furnish such protection as is required by the act is a wilful violation thereof.

3. INSTRUCTIONS—*when refusal of correct will not reverse.* It is not error to refuse to give an instruction containing a correct abstract proposition of law.

4. INSTRUCTIONS—*when upon province of jury will not reverse.* The following instruction though not strictly accurate in that it fails to tell the jury that they are the judges of the weight of the evidence, *held*, not ground for reversal.

"Under the instructions of the court the jury are the judges of the evidence in the case and the court does not intend by any of the instructions given you in this case to tell the jury how they should find as to any question of evidence in the case."

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Madison county; the Hon. W. E. HADLEY, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed April 15, 1911. *Certiorari* denied by Supreme Court (making opinion final).

WISE, KEEFE & WHEELER, for appellant.

GEERS & GEERS, for appellee.

MR. PRESIDING JUSTICE SHIRLEY delivered the opinion of the court.

This cause was submitted to the jury upon the second and third counts of the declaration. There was a verdict and judgment for $3,500 in favor of appellee.

The second count of the declaration avers a wilful failure to comply with subsection B of section 28 of the Miners Act which provides that where the hoisting or lowering of men occurs before daylight or after dark or when the landing at which men take or leave the cage is obscured by steam or otherwise, a light should be maintained sufficient to show the landing and surrounding objects, by reason whereof the deceased, Herman Grimm, who was in the employment of appellant, being unable to see there was no cage at the landing pushed a car into the shaft and fell therein causing his death.

The third count avers the cause of the death to have been the wilful failure of appellant to have its mine manager remain at said mine at night until all men employed during the day were hoisted out of the mine and to have a sufficient light maintained at the top landing.

Appellee sued as the mother of the deceased dependent upon him for support.

It is urged by appellant that there was no wilful violation of the statute shown and it was error to refuse appellant's instruction to direct a verdict finding it not guilty.

At the time of the accident appellant's mine had two landings from the shaft; the shaft being 150 feet deep. The top landing was the tipple 35 feet above ground. At the ground landing there was an automatic gate so hung that when opened (unless held by artificial means) it would close of its own weight.

On the afternoon about four o'clock before the accident, all the men working in the mine were hoisted to the surface and no more mining was to be done until the following morning. The mining of coal was con-

ducted from 7 A. M. to 3:30 P. M. each day.   On the day mentioned water had accumulated in working places in the mine and appellant desired while the mining of coal was not in operation to have the water hauled and emptied into the sump at the bottom of the shaft where it could be pumped to the surface.   When the mining operations were over on that day the deceased and a miner named Engelmeier were employed by the mine manager to return at seven o'clock in the evening and to haul the water to the sump and deliver powder and picks to various places in the mine during the night.   They returned and went into the mine and hauled the water.   About midnight the deceased and a man named Bilyeu ascended to the ground landing to get a box of tools to be lowered into the mine. The tools were at the surface and deceased had been told by one Campion the watchman that the tools would not be sharpened before eleven o'clock P. M. and the testimony shows that midnight was the usual hour at which the tools were taken down.   Engelmeier remained at the bottom.   When the deceased reached the ground landing the electric lights which lighted the landing had been extinguished by the engineer and the landing and places about it were dark.

The box of tools which was to be lowered upon the same cage which brought the deceased and Bilyeu to the surface was standing thirty feet away from the shaft on the track which leads from the cage and connects with it to the blacksmith shop.   The men went immediately from the cage to the box of tools and pushed it to the shaft preparatory to pushing it on the cage.   When the men left the cage to get the tools the engineer without any warning hoisted the cage from the ground landing to the top landing.   The place being dark the men supposed the cage to be still at the ground landing with the result that when they pushed it to where they supposed the cage to be, the box or car of tools fell into the shaft.   The men fell with the box and both

were killed. The men were to return to the bottom on the cage as soon as the tools were sent down.

Subsection 28 of the act in relation to mines and miners reads as follows:

"Whenever the hoisting or lowering of men occurs before daylight or after dark or when the landing at which men take or leave the cage is at all obscured by steam or otherwise, there must always be maintained at such landing a sufficient light to show the landing and objects distinctly."

We agree with counsel for appellant that the statute was enacted for the protection of men when the hoisting or lowering of men occurs and that portion of it which reads "or when the landing at which men take or leave the cage is obscured by steam or otherwise" relates back to the "hoisting or lowering of men." As we understand the contention of counsel it is that the accident occurred at a time when appellant was not required by the statute to maintain a light sufficient "to show the landing and objects distinctly," and that such light is only required at the usual time for lowering the men in the morning about 7 o'clock and in hoisting them in the afternoon about 3:30 and 4 o'clock which are the usual hours for lowering and hoisting men.

We do not feel justified in giving the statute a construction so narrow. The object of requiring a light at the shaft was to protect men whose duties required them to go up and down the shaft so they might be able to see the shaft and cages and avoid danger. And it is immaterial whether one man or many are so engaged.

We are of opinion that at that time appellant was engaged in hoisting and lowering men within the meaning of the statute although it appears that deceased was not to be lowered at the time he fell into the shaft but was to follow down after the box of tools. His duties called him to go up and down and this was sufficient to bring him within the protection of the statute

even if he did not intend to descend with the box of tools, but to follow it.

It is next contended the evidence is clear that there was no wilful violation of the statute for the reason it was not consciously violated, and that to constitute such wilful violation, two things were requisite: First, that the engineer knew the deceased was about to be lowered into the mine; second, that he knew there were no lights at the landing.

We are of opinion the evidence is sufficient to show a conscious violation on the part of appellant whether the engineer had or had not the knowledge it is claimed he should have had. The mine manager had employed the deceased to work there during the night. One of his duties was to deliver the box of tools in the mine, to do which it was necessary to be at the landing as already stated. Appellant knew his duties would require his presence there during the night and its duty was to furnish the light as the law required. To fail to furnish the light with such knowledge was a conscious violation of the statute.

Appellant assigns for error the refusal of the court to give the following instructions: "You are instructed that the law did not require the defendant to maintain lights at the ground landing of the mine at all times or under all conditions. The law only required it to maintain such lights whenever the hoisting or lowering of men occurred."

As an abstract proposition the instruction is correct but being an abstract proposition it was not error to refuse it. Devlin v. The People, 104 Ill. 504. Moreover there was no conflict in the evidence which showed appellant's duty to have the light and the refusal was harmless.

The court gave the following instruction for appellee: "Under the instructions of the court the jury are the judges of the evidence in the case and the court does not intend by any of the instructions given you in

this case to tell the jury how they should find as to any question of evidence in the case.''

It is complained the jury are not the judges of the evidence but of the weight of the evidence: that the court is the judge of the evidence. The instruction is not strictly accurate. The province of the jury is to determine the facts from the evidence submitted to them. In doing so however they are the judges of the weight of the evidence from which they find the facts in dispute to which they should apply the law given in the instructions. Instructions telling the jury they are the judges of the facts have been justly condemned as they do not confine the jury to the consideration of the evidence, but leave them free to consider facts not in evidence and making them independent of the rulings of the court on the admissibility of the evidence. This instruction is not subject to this objection. In this instruction they are confined to the evidence under the instruction of the court and they could not have been misled into the consideration of facts outside of the evidence. We do not think giving the instruction was reversible error.

We have examined the evidence of appellee in which statements of hers were admitted upon her examination and cross-examination and find nothing which we think would justify a reversal of the judgment nor do we think the damages excessive.

Taking the whole case as presented by the record no reversible error appears and the judgment will be affirmed.

*Affirmed.*